## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **PAULA DUCKETT, *et al.*,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-cv-01116 |
| | ) | |
| **DISTRICT OF COLUMBIA, *et al*.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS.

### STATEMENT OF THE CASE

Plaintiffs in this case, Paula Duckett ("Duckett"), Connie Spriggs ("Spriggs") and Carolyn Witcher-Sessoms ("Witcher-Sessoms"), were all employed as Assistant Principals with the District of Columbia Public Schools ("DCPS"). The DCPS abolished all of their positions through a reduction-in-force ("RIF") – Spriggs's position on September 20, 2002 and Duckett's and Witcher-Sessoms' positions on August 15, 2003. Spriggs and Duckett chose to retire rather than be separated, while Witcher-Sessoms did not retire or resign prior to being separated. (Sec. Am. Compl. ¶¶ 9, 10, 11, 20, 21, 22, 31, 32, 33.) At the time of their separations, all three had a vested right to be placed in ET-15 teaching positions as of the date their Assistant Principal positions were abolished. *See* D.C. Mun. Regs. tit. 5, § 520.3 ("A person who is not retained in the position of . . . Assistant Principal and who holds permanent status in another position in the D.C. Public Schools shall revert to the highest prior permanent level of employment upon his or her removal from the position of . . . Assistant Principal . . . .") However, the DCPS failed to place any of them in ET-15 teaching positions. Each had previously held teaching positions

1

with DCPS and each was entitled to placement in those positions by virtue of §520.3. (Sec. Am. Compl. ¶¶ 10, 21, 32, 33.)

In 2003, all three appealed their separations to the District of Columbia Office of Employee Appeals ("OEA"), claiming, *inter alia,* that they should have been placed in ET-15 teaching positions when their Assistant Principal positions were abolished. (*Id.* ¶¶ 10, 21,31, 32.) The OEA ruled as a matter of law that each Plaintiff had the right to be placed in an ET-15 teaching position on the date their Assistant Principal positions were abolished and OEA ordered DCPS to place Plaintiffs in those positions retroactively and restore all back pay and benefits. (*Id.* ¶¶ 10, 21, 32, 33.)

The OEA issued an initial decision in Duckett's case on September 16, 2004, ruling that DCPS constructively discharged her and ordering DCPS to place Duckett in an ET-15 Teacher position, retroactive to August 20, 2003 with restoration of back pay and benefits. Neither party appealed the decision to the OEA Board and the decision became final on October 21, 2004. Neither party appealed to Superior Court for the District of Columbia. DCPS did not comply with the OEA order and Duckett filed a motion to enforce the order on November 29, 2004. (Sec. Am. Compl. ¶¶ 13.) On January 11, 2006, OEA issued an Addendum Decision on Compliance which held that DCPS had not complied with the OEA's final decision and it certified the matter to the OEA's General Counsel for enforcement. (*Id.* ¶¶ 16.) On August 18, 2006, the General Counsel issued an order directing DCPS to comply with the OEA order no later than September 11, 2006. DCPS failed to comply with that order and the General Counsel declined to certify the matter to the Office of the Mayor and DCPS never complied with the order. (*Id.* ¶¶ 17, 18, 19.)

The OEA issued an initial decision in Witcher-Sessoms' case on December 13, 2004, ruling that DCPS unlawfully discharged her and ordering DCPS to place her in an ET-15 Teacher position, retroactive to August 15, 2003 and restore back pay and benefits. The decision became final on October 21, 2004 because neither party appealed. DCPS did not comply with the order and Witcher-Sessoms filed a motion to enforce the order on February 18, 2005. (*Id.* ¶ 23.) On January 16, 2006, OEA issued an Addendum Decision on Compliance which held that DCPS had not complied with the OEA's final order and it certified the matter to the OEA's General Counsel for enforcement. (*Id.* ¶ 27.) On September 6, 2006, the General Counsel issued an order directing DCPS to comply with the OEA order no later than September 27, 2006. (*Id.* ¶ 29.) DCPS failed to comply with that order and the General Counsel took no further action. (*Id.* ¶ 30.)

The OEA issued an initial decision in Spriggs's case on August 23, 2004, ruling that DCPS constructively discharged her and ordering DCPS to place her in an ET-15 Teacher position, retroactive to August 15, 2003 and restore back pay and benefits. The decision became final on September 27, 2004 because neither party appealed. DCPS did not comply with the order and Spriggs filed a motion to enforce the order on October 28, 2004. (*Id.* ¶ 35.) On November 22, 2005, OEA issued an Addendum Decision on Compliance which held that DCPS had not complied with the OEA's final order and it certified the matter to the OEA's General Counsel for enforcement. (*Id.*) On August 11, 2006, the General Counsel issued an order directing DCPS to comply with the OEA order no later than September 1, 2006. (*Id.* ¶ 37.) DCPS failed to comply with that order and the General Counsel took no further action. (*Id.* ¶¶ 38, 39.)

Plaintiffs filed their Complaint in this case on or about June 22, 2007. They named the District of Columbia, Pamela Graham and Clifford Janey as defendants and alleged violations of the fifth and fourteenth amendments to the United States Constitution and 42 U.S.C. § 1983, based upon the Defendants' failure to comply with the OEA orders and the absence of a judicial enforcement mechanism. On July 11, 2007, Plaintiffs filed their First Amended Complaint adding Michelle Rhee, Acting Chancellor of DCPS as a defendant. On August 10, 2007, Plaintiffs filed a Motion for Leave to File Second Amended Complaint along with a proposed Second Amended Complaint principally adding a claim for punitive damages against all Defendants. On or about August 29, 2007, this Court issued an Order granting the Plaintiffs Motion for Leave to File Second Amended Complaint, setting an initial Scheduling Conference date of September 17, 2007 and directing the Defendants to file a responsive pleading no later than September 12, 2007. The Second Amended Complaint was filed on August 30, 2007. On September 13, Defendants filed a Motion to Dismiss the Plaintiffs' Second Amended Complaint.

## STATUTORY SCHEME REGARDING OEA

Section 1-606.03 (a) permits an aggrieved employee of the District of Columbia to appeal a removal or reduction in force, as the case may be, to the OEA. The OEA is then responsible for adjudicating the matter through its administrative process which may include a hearing and written findings of fact and conclusions of law. *Id.* § 1-606.03 (b) and (c). Once the hearing examiner makes a decision, it becomes final within 35 days after its issuance unless either party files petition for review in the OEA. *Id.* § 1-606.03 (c). If the OEA grants the petition for review, the subsequent decision of the OEA becomes the final OEA decision. *Id.*

Either party may appeal a final OEA decision to the Superior Court for the District of Columbia. *Id*. § 1-606.03 (d); however, that section confers appellate jurisdiction only on the

Superior Court, not post-judgment enforcement authority.  Section 1-606.03 permits the Superior Court to: "affirm, reverse, remove or modify such decision or take other appropriate action the Court may deem necessary."  *Id.*   The additional language – "take other appropriate action the Court may deem necessary" – simply amplifies the existing appellate jurisdiction.  It does not permit the Superior Court to order an agency to comply with the OEA order, once the order has become final and enforceable.

Additionally, §1-606.03 does not provide an open window for review of DCPS action or enforcement of the OEA Orders.  Superior Court jurisdiction is limited to appeals taken 30 days after the OEA order becomes final.   Once the OEA decision becomes final, either party has 30 days to appeal.  The 30-day period begins to run from the date the decision becomes final or the date the final decision is served on the party wishing to appeal, whichever is later.   Superior Court Civil Procedure Rules, Title XV, Rule 1.

Section 1-606.09 provides an additional administrative enforcement mechanism in the event that an Agency fails to comply with an OEA order.  In the event that "the Office [OEA] determines that the respondent has not complied with the order within 30 calendar days of service of the order, the Office shall certify the matter to the General Counsel [of OEA] and any agency that may be appropriate for enforcement."  *Id.*

## ARGUMENT

## STANDARD OF REVIEW

Under Fed.R.Civ.P. 12(b)(6), a court must construe a plaintiff's complaint liberally in her favor, giving her "the benefit of all favorable inferences that can be drawn from the alleged facts." *Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C.Cir.1997). The question before the court is not whether the plaintiff will ultimately prevail; rather, it is whether the plaintiff could prove any set of facts in support of his claim that would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, (1984); *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

Defendants argue that *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-66 (2007) establishes a heightened pleading requirement that Plaintiffs' fail to meet. This is inaccurate. *Twombly* merely held that a plaintiff must plead sufficient facts to show the "grounds" for its entitlement to relief. The Court explicitly rejected the idea of "heightened fact pleading of specifics." Moreover, several days after handing down *Twombly*, the Supreme Court reemphasized that "specific facts" need not be pled so long as the complaint gives fair notice of the claims and the grounds on which it was based. *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (U.S. 2007) ("[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'") Thus, to meet the *Twombly* standard, the complaint need only avoid frivolity and provide the defendants enough notice to frame an answer. The basic Rule 12(b)(6) standard is unchanged.

Accordingly, "[c]omplaints 'need not plead law or match facts to every element of a legal theory.' " *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C.Cir.2000)(citations omitted); *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1086 (D.C.Cir.1998) ("[A] plaintiff

6

need not allege all the facts necessary to prove its claim."); *Atchinson v. District of Columbia*, 73 F.3d 418, 421-22 (D.C.Cir.1996) ("A complaint ... need not allege all that a plaintiff must eventually prove ...."); *Sinclair v. Kleindienst*, 711 F.2d 291, 293 (D.C.Cir.1983) ("The Federal Rules of Civil Procedure do not require a claimant to set out the precise facts on which the claim is based .... 'Notice pleading' is sufficient.").

## I.    THE CASE SHOULD NOT BE DISMISSED BECAUSE TWO PRINCIPAL ELEMENTS OF THE *YOUNGER V. HARRIS* ABSENTION DOCTRINE ARE NOT PPRESENT.

Defendants' first argument is that the abstention doctrine set forth in *Younger v. Harris,* 401 S. Ct. 37 (1971) requires dismissal of this case.   The *Younger* doctrine requires that there be: (1) an ongoing state proceeding; (2) important state interests; and (3) an adequate opportunity for plaintiffs to raise federal claims, *Ford v. Tait,* 163 F. Supp. 2d 57, 64-66 (D.D.C. 2001).  The *Younger* doctrine simply has no application here because Defendant has shown none of the elements cited above.

Under *Younger,* a federal court should only abstain if all three of the pre-conditions are met.  *See Bridges v. Kelly*, 84 F.3d 470, 476 (D.C. Cir. 1996).  Younger abstention is not appropriate if any one of them is not fully met, as federal courts have a "virtually unflagging obligation" to adjudicate federal questions properly brought before them.  *See Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (abstention "rarely should be invoked"); *Bridges v. Kelly*, 84 F.3d 470, 475 (DC Cir. 1996); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 US 1,14, (1983)*; Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 238 (1984).

## A.  THERE IS NO ONGOING STATE PROCEEDING.

There simply is no ongoing state proceeding in this case.  As the Defendants point out in their brief – "there was a state proceeding."   (Def. Mem. at 9.)  Defendants are correct to use the

past tense, as the state proceeding has long since terminated, the OEA orders are final and there are no further appeals.  Although unclear from their brief, Defendants appear to argue that there is an ongoing state proceeding because the orders in the case – entered in 2004 – are still appealable to the Superior Court under § 1-606.03 (d).   (Def. Mem. at 9.)  That is absolutely incorrect.

*Younger* abstention requires that the federal courts abstain when state court proceedings are pending or ongoing at the time the federal action was filed.   *Younger* abstention is inapplicable when the state proceedings have become final, as they have in this case.  *See Wooley v. Maynard*, 430 U.S. 705, 711 (1977) (*Younger* did not bar federal action where state proceedings had been completed);  *Doran v. Salem Inn, Inc*., 422 U.S. 922, 930 (1975) (*Younger* inapplicable where "[n]o state proceedings were pending against either [federal plaintiff] at the time the District Court issued its preliminary injunction");  *Steffel v. Thompson*, 415 U.S. 452, 462 (1974) ( "the relevant principles of equity, comity, and federalism 'have little force in the absence of a pending state proceeding'").

Here, there was no "ongoing" or "pending" proceeding at the time Plaintiffs' filed suit in this case.  As the basis for their assertion that there is an ongoing state proceeding, Defendants rely exclusively on §1-606.03.  Although unclear from their motion, Defendants appear to be arguing that the state process – the OEA litigation and ensuing orders – may now be enforced by the Superior Court through its appellate jurisdiction under §1-606.03.  Defendants baldly and frivolously assert that Superior Court presently has jurisdiction over this matter through enforcement powers that Defendants claim exist under §1-606.03.   Indeed, no such enforcement powers exist, as §1-606.03 provides the Superior Court with traditional appellate jurisdiction only and no enforcement authority whatsoever, once the judgment becomes final, which it has.

Section 1-606.03 does not confer post-order enforcement authority on the Superior Court. Section 1-606.03 permits the Superior Court to: "affirm, reverse, remove or modify such decision or take other appropriate action the Court may deem necessary." *Id.*   It does not permit the Superior Court to order an agency to comply with the OEA order, once the order has become final and enforceable.  In this case, neither side sought, nor should they have sought, to have the Superior Court correct or modify the decision, as each apparently believed the decision was correct.   Thus, there was simply no relief available under §1-606.03.

To suggest that the additional language in §1-606.03 – "take other action the Court may deem necessary" – confers jurisdiction on the Superior Court to enforce an OEA order after the appeal time has elapsed, is completely contrary to the purpose and language of that section. Section 1-606.03 provides a limited window of review, making it abundantly clear that it does confer enforcement jurisdiction.   The window of review closes within 30 days after the final OEA decision is issued or served – well before Plaintiffs would have been aware that DCPS was not going to comply with the ruling and well before an enforcement action would be feasible or contemplated.   Under § 1-606.03, a decision of the OEA becomes final 35 days after its issuance if no appeal is taken.  *Id.* § 1-606.03 (c).  Once the OEA decision becomes final, either party has 30 days to appeal.  The 30-day period begins to run from the date the decision becomes final or the date the final decision is served on the appellant, whichever is later.  Superior Court Civil Procedure Rules, Title XV, Rule 1.

In this case, the three decisions became final on the following dates: Duckett -- October 21, 2004; Witcher-Sessoms -- October 21, 2004; Spriggs – September 27, 2004.    These decisions all were appealable to the Superior Court within the 30 day period following their issuance.   That 30-day period – and therefore Superior Court jurisdiction   -- expired on

November 20, 2004 for Duckett and on October 27, 2004 for Witcher-Sessoms and Spriggs. Since no appeal was taken during that time frame, the Superior Court has no jurisdiction over those and the proceedings are concluded.

Not surprisingly, the Defendants have not mentioned or discussed the enforcement remedy set forth in § 1-606.09, a remedy which is administrative only and one which has long since been exhausted.  All three Plaintiffs filed motions in the OEA seeking enforcement of their respective OEA orders, the administrative judge certified each matter to OEA's General Counsel for enforcement and OEA's General Counsel issued orders to DCPS directing it to comply with the OEA orders.   These compliance orders were issued on August 11, 2006, August 18, 2006 and September 6, 2006.  In each case, the DCPS ignored the General Counsel's Orders and in each case the General Counsel declined to certify the matter to the Office of the Mayor.  That terminated the proceedings and there simply are no ongoing proceedings.

### B.  THERE ARE NO IMPORTANT STATE INTERESTS THAT WOULD HAVE AN IMPACT ON EQUITY, COMITY OR FEDERALISM.

The second *Younger* element also has not been satisfied.  It requires that the concurrent state proceedings implicate an important state interest.   *Younger v. Harris*, 401 U.S. a 43.   In *Younger*, the Supreme Court held that the State of California had an important state interest in prosecuting criminal cases under California's Penal Code.  *Id. at*  43.  In *Middlesex County Ethics Committee, v. Garden State Bar Assoc*., the Supreme Court applied the doctrine to a civil proceeding because the State of New Jersey had a vital state interest in the regulating the practice of law in part because of the nature of the proceedings closely resemble those of criminal prosecutions.  457 U.S. 423, 432-4 (1982).

Here, the Plaintiffs seek to enforce an administrative order and obtain damages for due process violations caused by the Defendants' three-year failure to abide by an order from its own

administrative body.  This interest is in no way analogous the vital state interest in prosecuting criminal cases and regulating the practice of law.

Defendant defines the applicable state interest in the present case as the ability to regulate its own workforce through a reduction in force action. The ability to control the results in this case have long since passed. Plaintiffs were victorious. Defendants place principal reliance on *Bridges v. Pratt,* 84 F.3d 470 (D.C. Cir. 1996).  (Def. Mot. 9.)  However, the reasoning in *Bridget* does not apply here as the procedural posture of these cases is entirely different.   In *Bridget*, the OEA had yet to issue any final orders when the Plaintiff filed suit in federal court challenging his removal under a reduction in force.  Thus, the Federal Court in *Bridges* was asked to adjudicate the important District interest regarding legitimacy of the reduction in force action.  However, in the present case, OEA has already ruled on the reduction in force issue and the instant proceedings concern only the due process violations resulting from the District's irrational delay in providing the Plaintiffs' OEA ordered relief.

### C. EVEN IF THE OEA PROCEEDINGS ARE "ONGOING STATE PROCEEDINGS" – WHICH THEY ARE NOT -- *YOUNGER* ABSTENTION IS INAPPLICABLE BECAUSE PLAINTIFF SEEKS RELIEF THAT IS UNAVAILABLE UNDER ANY DISTRICT OF COLUMBIA LAW.

Even if the OEA proceedings – which definitively ended in late summer or early fall 2006 -- are considered "ongoing state proceedings" application of the doctrine still fails because Plaintiffs cannot recover any damages or attorney's fees beyond what the OEA has already ordered.  Compensatory and punitive damages and attorney's fees are recoverable under 42 U.S.C. § 1983.  Therefore, the third prong of *Younger* is not satisfied.

In *Bridges v. Kelly*, 84 F.3d 470, 477 (D.C. Cir. 1996), the D.C. Circuit made clear that abstention is inappropriate where the state system is unable to provide full relief. *Also see*

*District Properties Assocs. v. District of Columbia*, 743 F.2d 21, 28 (D.C. Cir. 1984); *Le Shawn A. by Moore v. Kelly*, 990 F2d 1319, 1322 (D.C. Cir 1993). In *Bridges*, the court found nothing in the D.C. Code authorizing the OEA to award punitive and compensatory damages in excess of back pay and benefits for harms caused by the District of Columbia. *Bridges*, 84 F.3d at 477. *See, also,* D.C.CODE ANN. § 1-606.3(a), (b) (1992). Further, the court observed that, on appeal from the OEA, that the D.C. Superior Court and the D.C. Court of Appeals cannot entertain requests for relief that are not within the OEA's scope of authority. *Id.* Because Appellant sought compensatory and punitive damages in connection with his § 1983 claim, the court reasoned that the inability of the District of Columbia to award all of the relief he sought under his § 1983 claims, dismissal under *Younger* was precluded. *Id.*

Here, *Younger* is inapplicable because the no District of Columbia law permits recovery of any damages or attorneys fees beyond what OEA has already awarded. Specifically, punitive damages, injunctive relief, declaratory relief, attorney's fees and trial by jury are unavailable. *See id.* at 477 n.10; see also *District of Columbia v. Thompson*, 593 A.2d 621, 635 & n.25 (D.C. 1991) (concluding that employees appealing to the OEA may seek reinstatement and back pay).[1]

**Therefore**, for this additional reason, the *Younger* abstention doctrine is in applicable and should not result in the dismissal of this case.

## II.    PLAINTIFFS MORE THAN ADEQUATELY PLEAD CLAIMS OF MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983.

Defendants argue that the District of Columbia (a municipality) cannot be liable under 42 U.S.C. § 1983. The basis for this argument is that Plaintiffs must demonstrate not only that employees and agents of the District of Columbia committed constitutional violations, but also

---

[1] Any suggestion that this Court should dismiss this case because Plaintiffs could have filed their claims under 42 U.S.C. § 1983 in Superior Court must fail. Plaintiffs are entitled to chose the court where they assert their federal rights and the federal courts have an unflagging obligation to adjudicate such claims. *See Hoai v. Sun Refining and Marketing Company*, 866 F.2d 1515, 1518 (D.C. Cir. 1989).

that the constitutional torts were committed pursuant to a policy or custom of the District of Columbia. (Def. Mot. at 10-12.) The District of Columbia fails to recognize that the Plaintiffs have sufficiently alleged municipal liability under § 1983 and are entitled to conduct discovery to develop the facts related to that issue.

Defendants argue that it is necessary to show that the actions of the District of Columbia involve more than an isolated incident. (Def. Mot. at 11.) It is not necessary for Plaintiffs' to prove that a municipality has followed a particular course of action repeatedly in order to establish the existence of a municipal policy for purposes of § 1983 liability. Rather, Municipalities can be liable under § 1983 for single episodes of conduct that are not part of any pattern of illegality, as, for example, where there has been a single instance of conduct perpetrated by the municipality's policymakers themselves; such one-time conduct can represent official "policy" even though it does not necessarily form part of a plan or rule developed to govern all like occasions. See *McKnight v. District of Columbia*, 412 F. Supp. 2d 127, ___ (D.D.C. 2006); *Banks v. District of Columbia*, 377 F. Supp. 2d 85, ____ (D.D.C. 2005). Moreover, where an official policymaker ratifies a single, unlawful action that reflects indifference to the risk of constitutional violation, that approval represents government policy giving rise to potential § 1983 liability. See, *Mellon v. City of Oklahoma City*, 879F.2d 706 (10th Cir. 1989) (Municipal liability held proper where the plaintiff was fired by the police chief, but the action was approved by the city manager, the final policymaker with respect to employment decisions.)

Here, Plaintiffs' identify three Municipal policy makers whose actions/ratifications caused the injury. Two of the Defendants—Janey and Rhee—operated as Chief Executive Officers for DCPS during the relevant periods. In that capacity, each had policymaking authority

over state educational matters and policies. The third Defendant, Graham, operated as Chief Financial Office for DCPS and she handled all fiscal responsibilities, including all accounts receivable, payroll, and other expenses to be paid by her office, including the payment of all back pay awarded against DCPS.

However, on its face, the Second Amended Complaint alleges sufficient facts from which the Court – giving all reasonable inferences in favor of Plaintiffs – could conclude that District of Columbia policy makers engaged in a concerted effort to deny the Plaintiffs their constitutionally protected property interests.  These policy makers systematically ignored three separate lawful orders of the OEA and later orders from the OEA's general counsel directing the reinstatement of the Plaintiffs and the award of back pay and lost benefits.   Certainly, a fact finder could conclude that the District of Columbia was following an established custom or practice when it did so.   Plaintiffs have not alleged facts which concern an isolated beating of a victim by police, for which there may have been no supporting policy or custom.  Plaintiffs allege that the policy makers have ignored their rights which were established clearly and unequivocally by the OEA and by statute.

Additionally, Plaintiffs need not plead their claim for municipal liability under § 1983 with any greater degree of specificity than they have.  (Def. Mot. 11.)  Having identified relevant policymakers, "it is for the jury to determine whether their decisions/ratifications have caused the deprivation of rights at issue. . . ." *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989). S*ee also,  Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1086 (D.C.Cir.1998) ("[A] plaintiff need not allege all the facts necessary to prove its claim."); *Atchinson v. District of Columbia,* 73 F.3d 418, 421-22 (D.C.Cir.1996) ("A complaint ... need not allege all that a plaintiff must eventually prove ...."); *Sinclair v. Kleindienst*, 711 F.2d 291,

293 (D.C.Cir.1983) ("The Federal Rules of Civil Procedure do not require a claimant to set out the precise facts on which the claim is based .... 'Notice pleading' is sufficient.").

It is well-established that the issue of whether the relevant custom or policy exists is not one that should be resolved at the motion to dismiss stage, as it is a matter for which the Plaintiffs are entitled to develop the facts through discovery. *See Marcavage v. City of Chicago,* 467 F.Supp.2d 823, 830 (N.D.Ill. 2006)("Plaintiffs are entitled to the opportunity, through discovery, to develop the facts that can show the existence of policies that they allege are actionable under *Monell*"); *Fuentes v. Hampden County Sheriff's Department*, 429 F.Supp.2d 253, 264 (D. Mass 2006)(the due process claim must be dismissed if after discovery it is clear that there is no official policy or custom which caused the constitutional injury").

Therefore, Plaintiffs' claims for the District of Columbia's liability under § 1983 should not be dismissed.   If the Court concludes that the allegations in the Second Amended Complaint regarding such liability are insufficient to meet the pleading standards under Fed.R.Civ.P. 8(a), the Court should provide the Plaintiffs with leave to amend their complaint.

### III. PLAINTIFFS HAVE ALLEGED FIFTH AND FOURTEENTH AMENDMENT VIOLATIONS.

#### A. PLAINTIFFS HAVE A PROPERTY INTEREST PROTECTED BY THE FIFTH AND FOURTEENTH AMENDMENTS.

Plaintiffs have alleged violations of the fifth and fourteenth amendments to the United States Constitution.  Although unclear from their motion to dismiss, Defendants appear to be arguing that Plaintiffs were not deprived of any property interest within the meaning of the fifth and fourteenth amendments.  (Def. Mot. at 13-14.)   Defendants are simply wrong as the Plaintiffs' property right arises from independent statutory authority giving them the right to be placed in teaching positions as of the date of their terminations as Assistant Principals.   That

15

right has an independent source, is unqualified and was adjudicated in Plaintiffs' favor by the OEA, which firmly established the existence of the right.

It is well-established that the Fifth Amendment Due Process Clause applies to actions of the District of Columbia government. *Bolling v. Sharp,* 347 U.S. 497, 499 (1954). In *Board of Regents v. Roth*, 408 U.S. 564 (1972), the Supreme Court held that state law may create property interests within the meaning of the fifth and fourteenth amendments to the United States Constitution. *Id.* at 577. Such interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlements to those benefits." *Id.* Thus, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id. See also Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538-39 (1985); *Bishop v. Wood, 426 U.S.* 341, 345 & n. 7 (1976)("[property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law").

There is no question that the Plaintiffs all had property interests which were protected by the fifth and fourteenth amendments, rights which were created unequivocally by regulation. At the time of their separations, all three Plaintiffs had a vested right to be placed in ET-15 teaching positions as of the date their Assistant Principal positions were abolished. *See* D.C. Mun. Regs. tit. 5, § 520.3 ("A person who is not retained in the position of . . . Assistant Principal and who holds permanent status in another position in the D.C. Public Schools shall revert to the highest prior permanent level of employment upon his or her removal from the position of . . . Assistant Principal . . . .") Moreover, when DCPS failed to place any of them in ET-15 teaching positions,

they appealed to OEA which adjudicated the issue and ruled as a matter of law that each of the Plaintiffs needed to be placed in teaching positions retroactively with full back pay and benefits by virtue of §520.3.  (Sec. Am. Compl. ¶¶ 10, 21, 32.)

By failing to comply with the orders of the OEA, Defendants are depriving Plaintiffs' of back pay, rights to reinstatement, and other property to which they have a legitimate claim of entitlement, without due process of law.

### B. PLAINTIFFS HAVE ALLEGED SUBSTANTIVE DUE PROCESS VIOLATIONS.

Defendants argue that there is no substantive or procedural due process violation.  Again their arguments are not clear.   They appear to argue that their conduct does not violate substantive due process because it does not rise to the level of oppression, abuse of governmental power that shocks the conscience or action that is legally irrational because it is not sufficiently keyed to any legitimate state interests.   (Def. Mot. at 14.)   Defendant is mistaken; its actions in ignoring the legally binding decisions of the OEA and the orders issued by its General Counsel were oppressive, abusive in a manner that shocks the conscience and legally irrational.

To succeed on a substantive due process claim, plaintiff must prove "egregious government misconduct" in depriving him of his property interest.   *George Washington University v. District of Columbia,* 318 F.3d 203, 209 (D.C. Cir. 2003).  Substantive due process "prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational [in that] it is not sufficiently keyed to any legitimate state interests."  *Washington Teachers' Union v. Board of Education of the District of Columbia,* 109 F.3d 774, 781 (D.C. Cir. 1997).  Plaintiffs must show that District of Columbia officials are "guilty of grave unfairness in the discharge of their legal

responsibilities.   Only substantial infringement of state law prompted by personal or group animus, *or a deliberate flouting of the law that trammels significant personal or property rights* qualifies for relief" under § 1983.  *Silverman v. Barry,* 845 F.2d 1072, 1080 (D.C. Cir. 1988). Inadvertent errors, honest mistakes, agency confusion, even negligence in the performance of official duties, do not warrant redress under § 1983.  *Id.*

A  governmental entity trammels property rights when it refuses to ensure that court orders and judgments are respected and enforced.  *See e.g. Plyer v. Moore,* 100 F.3d 365, 373 (4th Cir. 1996)("We have little trouble accepting the proposition that the right of access to the courts necessarily includes the right to enforce a judgment once it is obtained"); *Also see Cooper v. Aaron,* 358 U.S. 1 (1958)("Due process" is meaningless if the end result of such process – a court order – is of no force and effect); *Brinkerhoff-Faris Trust & Savings Company v. Hill,* 281 U.S. 673, 682 (1930)(observing that due process requires states to provide "some real opportunity" for individuals to protect and enforce their rights)

In this case, there was far more than negligence, confusion or inadvertent error.  The DCPS was represented by counsel throughout this process.  Additionally, in 2004, the DCPS was served with not one but three orders from OEA directing the reinstatement and restoration of benefits to Plaintiffs Spriggs, Duckett and Witcher-Sessoms.   It received all of those orders in fall, 2004 and it failed to restore to Plaintiffs the property interest that it took.   It was also served with a motion to enforce these orders by the undersigned counsel in late 2004; again it failed to comply with the orders by restoring Plaintiffs' property interests.   In 2006, after a lengthy enforcement process, OEA's General Counsel served DCPS with three enforcement orders; it also ignored them.  The General Counsel declined to take further action.

These actions demonstrate that the DCPS deliberately flouted the law and in the process deprived all three Plaintiffs of the property rights they fought hard to win.   On its face, these actions appear to have been taken deliberately or in reckless disregard of the Plaintiffs' rights.  It is simply implausible that these actions could have escaped the radar of high-level agency officials who were responsible for implementing the relief won by Plaintiffs.   Certainly, before any discovery has taken place, this Court should not dismiss Plaintiffs' substantive due process claims.  The Plaintiffs are at the very minimum, entitled to discovery on the issue of whether DCPS officials acted deliberately or negligently, as it claims.   Therefore, Plaintiffs has sufficiently alleged claims of substantive due process violations against the District of Columbia and the individual defendants.

## C. PLAINTIFFS HAVE ALSO ALLEGED PROCEDURAL DUE PROCESS VIOLATIONS.

As discussed previously, the Plaintiffs have legitimate property interests in placement in teaching positions with full back pay and benefits restored.     Although Plaintiffs received adequate due process in the pre-order stage of the OEA proceedings, Plaintiffs have not received adequate due process in the post-order phase of the proceedings in OEA.   Plaintiffs were left with OEA orders that were essentially meaningless because the DCPS refused to comply with them.  Plaintiffs were also left with no meaningful judicial enforcement mechanism to force DCPS to comply with the rulings of OEA.   As discussed previously, D.C. Code § 1-606.03 provides no judicial enforcement remedy.  Additionally, the administrative remedies contained in § 1-606.09, were exhausted but failed to result in DCPS compliance with the orders.   There simply is no judicial remedy which permits the Plaintiffs to force DCPS compliance, to obtain damages for its recalcitrance and to compensate Plaintiffs for the attorney's fees they incurred in

the enforcement process.  For these reasons, the Defendants have violated Plaintiffs' procedural

due process rights.

IV.    **RHEE, JANEY AND GRAHAM ARE PROPERLY NAMED AS DEFEDNANTS.**

A. **DEFENDANTS ARE BEING SUED IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES.**

Defendants argue that "Rhee, Janey and Graham should be dismissed from the lawsuit

because Plaintiffs sued them in their official capacity" and there is no longer a need to bring

official-capacity actions against local government officials, for local government units can be

sued directly for damages and injunctive or declaratory relief.  (Def. Mot. at 15.)  Nothing in

Plaintiffs' complaint states that Defendants' are being sued solely in their official capacity.  The

Supreme Court has noted that when a complaint fails to specify the capacity in which a

government official is sued, the "course of proceedings" will usually indicate the sort of liability

the plaintiff seeks to impose.  *Kentucky v Graham*, 473 U.S. 159, 167 n.14 (1985).

It is evident from the relief sought in the Second Amended Complaint that the Plaintiffs

have sued the above individuals in both their individual capacities – because Plaintiffs seek

damages against them – and in their official capacity – as Plaintiffs also seek declaratory and

injunctive relief.  Defendants' implicitly concede this by arguing that the court should dismiss

claims against the named officials on the ground of qualified immunity, which is available only

in individual capacity suits.  *Id.*

B. **RHEE, JANEY AND GRAHAM ARE LIABLE IN THEIR INDIVIDUAL CAPACITIES.**

An official may be liable in her personal capacity where she knew or should have known

that her conduct violated clearly established rights. *Crawford-El v. Britton,* 523 U.S. 574, 592

(1998); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If "the contours of [a right are]

sufficiently clear that a reasonable official would understand that what he is doing violates that right," an official may be personally liable. *Wilson v. Layne*, 526 U.S. 603, 614-615 (1999).

Here, Defendants' knew or should have known that Plaintiffs' rights were being violated. In Fall, 2004, the DCPS was served with three separate orders from OEA directing the reinstatement and restoration of benefits to Plaintiffs. These OEA orders directed Defendants, in no uncertain terms, to provide back pay and reinstatement. Due to their ongoing non-compliance, DCPS was subsequently served with a motion to enforce these orders in late 2004 and, in 2006, OEA's General Counsel served DCPS with three enforcement orders. Because the final OEA judgment—and subsequent orders—were mandatory, Defendants' knew or should have known that simply ignoring these orders violated Plaintiffs' rights conveyed under the Fifth Amendment Due Process Clause. Moreover, the extent to which these officials knew about the orders and made conscious decisions to ignore them concern issues that must be developed during the discovery process. Since discovery has not yet taken place, dismissing these individuals would be premature.

### C. RHEE, JANEY AND GRAHAM ARE LIABLE IN THEIR OFFICIAL CAPACITIES.

Officials of a municipality can be held liable in their official capacities where their acts are the official acts of the municipality. *Graham*, 473 U.S. 159; *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (1996). This test is satisfied where the constitutional injury is caused by a person with final policymaking authority. *See Jett v. Dallas Independent Sch. District*, 491 U.S. 701, 737 (1989). Here, Defendants are high-level management officials and as such, had the final authority and responsibility to comply with the OEA orders. Specifically, Defendants Janey and Rhee operated as Chief Executive Officers for the DCPS during the relevant periods. In that capacity, each had policymaking authority over state educational matters

and policies. Defendant Graham was Chief Financial Office for DCPS and she handled all fiscal responsibilities, including the payment of all back pay owed by DCPS.

It strains credulity to believe that the final OEA judgment—and multiple ensuing orders—could have escaped the radar of high-level agency officials who were responsible for implementing the relief won by Plaintiffs. In view of Defendants' positions of authority, their repeated failure to follow or enforce the OEA judgment, and their "deliberate indifference" to Plaintiffs' rights, their conduct constituted official policy or custom of the District of Columbia. Accordingly, they are liable in their official capacities and the District is liable in damages for their conduct pursuant to 42 U.S.C. § 1983. *See*, *Daskalea v. District of Columbia*, 227 F.3d 433,440 (D.C. Cir. 2000); see, also, *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C.Cir.1997) (noting that "inaction giving rise to or endorsing a custom" can be basis of § 1983 liability).

## V.    NEITHER RHEE, JANEY NOR GRAHAM HAVE QUALIFIED IMMUNITY.

Defendants argue that Rhee, Janey, and Graham are entitled to qualified immunity. When a government official asserts qualified immunity, the court must apply a two-part analysis.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). In developing the doctrine of qualified immunity, the Supreme Court has sought to strike a balance "between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties." *Anderson v. Creighton*, 483 U.S. 635, 639, (1987) (quotation omitted). Recognizing that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching

discovery," *Harlow*, 457 U.S. at 817-18 the Court balanced those competing interests by establishing a higher threshold for holding public officials personally liable for constitutional violations.

For a public official to be liable for damages, that official must have violated a constitutional right, *and* that right must have been "clearly established" - "[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Anderson*, 483 U.S. at 640; see id. at 638  ("qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law'")(citations omitted).

A court performing a qualified immunity inquiry "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right." *Wilson v. Layne*, 526 U.S. 603, 609, (1999) (quotation omitted). If the court establishes the violation of a constitutional right, it must then "proceed to determine whether that right was clearly established at the time of the alleged violations." *Id.* (quotation omitted). The Supreme Court has instructed that deciding whether a constitutional right was violated first, rather than asking whether the right was clearly established, "promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Id.*

The validity of the qualified immunity analysis "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Anderson*, 483 U.S. at 639. At the first stage of the inquiry, "courts must not define the relevant constitutional right in overly general terms, lest they strip the qualified immunity defense of all meaning." *Butera v. District of Columbia,* 235 F.3d 637, 646 (D.C.Cir.2001). It does no good to allege that police officers violated the right to free speech, and then conclude that the right to free speech has been "clearly established" in this country since 1791. Instead, courts must "define the right to a degree that

would allow officials 'reasonably [to] anticipate when their conduct may give rise to liability for damages'...." *Id*. (citations omitted).

As described above, Defendants' refusal to comply with the OEA orders violated their procedural and substantive due process rights. Plaintiffs have clearly established property rights under the Fifth Amendment. Defendants violated procedural and substantive due process by ignoring numerous orders directing them to provide the relief that Plaintiffs were awarded by the OEA. Because there is no reasonable basis upon which Defendants' could have concluded that their actions were lawful and constitutional, the individual defendants are not entitled to qualified immunity.

## CONCLUSION

For the reasons stated, this Court should deny the Defendants' motion to dismiss the Second Amended Complaint in its entirety.

_____/s/_____
Omar Vincent Melehy, Esq.
D.C. Bar No. 415849
Melehy & Associates, LLC
8403 Colesville Rd., Suite 610
Silver Spring, MD 20910
Phone: (301) 587-6364
Fax:    (301) 587-6308
Email: ovmelehy@melehylaw.com

*Attorney for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PAULA DUCKETT,** *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-cv-01116 |
| | ) | |
| **DISTRICT OF COLUMBIA,** *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER**

After due consideration of the Defendants' Motion to Dismiss the Plaintiffs' Second Amended Complaint and the Plaintiffs' Memorandum in opposition, it is this _____ day of _____, hereby

ORDERED that the Motion is denied.

_____
JUDGE